## RECORD NO. 14-7082

In The

# United States Court Of Appeals
## For The Fourth Circuit

### CLIFTON L. COLLINS,

*Petitioner – Appellant,*

**v.**

## HAROLD W. CLARKE,
## Director, Virginia Department of Corrections,

*Respondent – Appellee.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT RICHMOND**

––––––––––––––––

**OPENING BRIEF OF APPELLANT COLLINS**

––––––––––––––––

**David B. Hargett, Esquire**
**HARGETT LAW, PLC**
**11545 Nuckols Road**
**Suite C**
**Glen Allen, VA 23059**
**(804) 788-7111**

**James T. Maloney, Esquire**
**JAMES T. MALONEY, PC**
**9 South Adams Street**
**Richmond, VA 23220**
**(804) 788-1956**

*Counsel for Petitioner – Appellant*          *Counsel for Petitioner – Appellant*

# <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

SUBJECT MATTER AND APPELLATE JURISDICTION . . . . . . . . . . . . . . . . . 2

ISSUES PRESENTED FOR REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I.     Collins' Trial Counsel Was Ineffective in Failing to Preserve for
        Appeal the Issue of Whether the Retroactive Application of
        Virginia Statutory Licensing Requirements to Limit His Common
        Law Rights as a Bail Bondsmen Violated His Right to Due
        Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        A.     Federal common law is such that a bondsman may seize
                and deliver a fugitive and may pursue him into another
                state . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        B.     The abolishment of a common law right to apprehend a
                fugitive was not clear until the Virginia Supreme Court
                interpreted the statute at the conclusion of Collins' direct
                appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

i

C.    Because the Virginia statutes failed to expressly abrogate the federal common law, Collins had the right to use the broad authority granted to him under the bondsman/principal relationship to recover his fugitive, including temporary detention of the complainant for the limited period of time it took to confirm his identification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

D.    Collins' was denied his constitutional right to effective assistance of counsel, and the state court's determination under <u>Strickland v. Washington</u> was unreasonable . . . . . . . 24

II.    Collins' Counsel Was Ineffective in Failing to Argue at Trial and on Appeal That Collins Lacked the Requisite Intent to Commit an Abduction Because the Detention Was Merely Incidental to His Acting Without a Virginia License . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

ii

## TABLE OF AUTHORITIES

**Page(s)**

*Cases*

Bouie v. City of Columbia,
        378 U.S. 347 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20, 22

Brown v. Commonwealth,
        230 Va. 310, 337 S.E.2d 711 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . 27-29

Collins v. Commonwealth,
        283 Va. 263, 720 S.E.2d 530 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 13

Collins v. Commonwealth,
        57 Va. App. 355, 702 S.E.2d 267 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . 3

Commonwealth v. Lyon,
        45 Va. Cir. 191 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Commonwealth v. Wilkinson,
        415 Mass. 402, 613 N.E.2d 914 (1993) . . . . . . . . . . . . . . . . . . . . . 19-21, 23

DeCastro v. Branker,
        642 F.3d 442 (4th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 26

Fitzpatrick v. Williams,
        46 F.2d 40 (5th Cir. 1931) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Gov't of the Virgin Islands v. Berry,
        604 F.2d 221 (3d Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Gov't of The Virgin Islands v. Ventura,
        775 F.2d 92 (3rd Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Johnson v. Commonwealth,
        221 Va. 872, 275 S.E.2d 592 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

iii

Levy v. Arnsthall,
    51 Va. (10 Gratt.) 641 (1854) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Lopez v. McCotter,
    875 F.2d 273 (10th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 21, 11

McNeill v. Polk,
    476 F.3d 206 (4th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 26

Nicolls v. Ingersoll,
    7 Johns 145 (NY Sup. Ct. Judicature, 1810) . . . . . . . . . . . . . . . . . . . . . 10, 11

People v. Daniels,
    71 Cal. 2d 1119, 459 P.2d 225 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

People v. Miles,
    23 N.Y.2d 527, 245 N.E.2d 688 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Strickland v. Washington,
    466 U.S. 668 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25, 30

Taylor v. Taintor,
    83 U.S. 366 (1872) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 12, 16, 25

**Constitutional Provision**

U.S. Const. Art. 1, § 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**Statutes**

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 2254 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7, 26

Virginia Code § 9.1-185 to 9.1-185.18 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Virginia Code § 9.1-186 to 9.1-186.13 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Virginia Code § 9.1-186.12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Virginia Code § 9.1-186.13 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Virginia Code § 9.1-190 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Virginia Code § 18.2-26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Virginia Code § 18.2-47 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Virginia Code § 18.2-53.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Virginia Code § 141-190 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## Other Authorities

Restatement of Security §204, Comment B (1941) . . . . . . . . . . . . . . . . . . . . . . . 9

Attorney General of North Carolina, Response to
      Request for Advisory Opinion Regarding out of
      State Bail Bondsman Entering North Carolina
      to Recover Principals (Oct. 14, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Attorney General of South Carolina, Letter to
      Jeffrey B. Moore, Executive Director, South Carolina's
      Sheriff's Association (Jan. 9, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

| | | |
|---|---|---|
| **CLIFTON L. COLLINS,** | ) | |
| | ) | |
| **Petitioner - Appellant,** | ) | |
| | ) | |
| **v.** | ) | **No. 14-7082** |
| | ) | |
| **HAROLD CLARKE, DIRECTOR,** | ) | |
| | ) | |
| **Respondent - Appellee.** | ) | |

## <u>BRIEF OF APPELLANT</u>

TO THE HONORABLE CHIEF JUDGE AND ASSOCIATE JUDGES OF THE

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT:

Your Appellant, **CLIFTON L. COLLINS**, Petitioner in the court below and

hereinafter referred to as "Collins," respectfully represents that he is aggrieved by

the final decision of the United States District Court for the Eastern District of

Virginia (Richmond Division), dated June 19, 2014, and requests that upon review

the aforesaid Final Order be reversed and the case remanded with instructions that

the district court grant habeas relief, vacate the convictions, and dismiss the

indictments.

1

## SUBJECT MATTER AND APPELLATE JURISDICTION

By order dated June 19, 2014, the United States District Court for the Eastern District of Virginia, Richmond Division, dismissed Collins' federal habeas petition by a prisoner in state custody.  Clifton L. Collins v. Harold W. Clarke, Case No. 3:13-cv-00763.

The district court had subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 2254, and this Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## ISSUES PRESENTED FOR REVIEW

I.    Whether Collins' trial counsel was ineffective in failing to preserve for appeal the issue of whether the retroactive application of Virginia statutory licensing requirements to limit his common law rights as a bail bondsmen violated his right to due process?

II.   Whether Collins' counsel was ineffective in failing to argue at trial and on appeal that Collins lacked the requisite intent to commit an abduction?

## STATEMENT OF THE CASE

In state custody as a result of his convictions addressed herein, Collins respectfully declares that he is being held in violation of his constitutional rights. Collins was an inmate at the time his habeas petition was filed in the federal district court.  On or about February 11, 2015, Collins was released from active incarceration but still has a five-year suspended sentence hanging over his head.

In a bench trial in the Circuit Court of Mecklenburg County, Virginia, Collins was convicted of attempted abduction pursuant to Virginia Code §§ 18.2-26 and 18.2-47 and use of a firearm in the commission of a felony pursuant to Virginia Code § 18.2-53.1. The circuit court sentenced Collins to incarceration for a term of five years on the attempted abduction charge, all suspended, and to the mandatory term of three years in prison on the firearm charge. (JA 74).

Collins appealed his convictions. On December 14, 2010, the Virginia Court of Appeals affirmed the convictions by published opinion. Collins v. Commonwealth, 57 Va. App. 355, 702 S.E.2d 267 (2010). On January 13, 2012, the Virginia Supreme Court – as a matter of first impression – ruled that sufficient evidence supported Collins' conviction for attempted abduction (Va. Code §§ 18.2-26 and 18.2-47) as his actions proved that he seized another person with intent to deprive the person of his personal liberty. According to the Court, as a bail bondsman licensed in another state, he was not justified in apprehending whom he thought was a fugitive bailee. Collins v. Commonwealth, 283 Va. 263, 720 S.E.2d 530 (2012). (JA 74-84).

On January 11, 2013, Collins filed a habeas petition in the Virginia Supreme Court alleging constitutional violations and requesting an evidentiary hearing and habeas relief. The Respondent subsequently moved to dismiss the petition. Collins

3

filed a Response. By order dated July 10, 2013, the Virginia Supreme Court denied and dismissed the habeas petition. <u>Clifton L. Collins v. Harold W. Clarke, Director, Virginia Department of Corrections</u>, Record No. 130099 (July 10, 2013). (JA 85-88).

On November 15, 2013, Collins filed a habeas petition in the federal district court. By order dated June 19, 2014, the district court denied relief and dismissed the habeas case. The district court declined to issue a certificate of appealability. (JA 257-69).

Collins timely noted this appeal and filed his informal brief. This Court granted a certificate of appealability as to the issues listed herein.

At trial, the uncontradicted evidence was that James Sydnor [hereinafter "the fugitive"] was arrested and charged in the Superior Court of Wake County North Carolina for a felony. He was released on a $10,000 bond which was posted by a licensed North Carolina bonding agent employed by Collins' company, and Collins was a properly licensed bail bondsman in the State of North Carolina. (JA 75, 131-32).

On March 29, 2007, Collins traveled to Mecklenburg County, Virginia, to apprehend the fugitive. He first made contact with Deputy Sheriff Jones of the Mecklenburg Sheriff's Office who confirmed through NCIC records that the fugitive was in fact a fugitive from justice in North Carolina. Although he indicated that the Sheriff's Office was unable to provide direct assistance due to his understanding of

4

extradition policies, it was "okay" for Collins to make an attempt to apprehend this individual. Collins then proceeded to a church where he believed the fugitive to be attending a funeral. The proceeding facts were either uncontradicted by the Commonwealth or part of the Commonwealth's case in chief. (JA 75-76, 90-99).

At the church, according to the Commonwealth's evidence, Collins confronted C.S., a cousin who bore a family resemblance to the fugitive. Collins repeatedly referred to him as "Jimmy," the name of the fugitive. The Commonwealth's evidence was that Collins had a firearm drawn and grabbed C.S. by the shoulder until C.S. advised he was not "Jimmy" and provided identification. At that time, Collins released C.S., got back into his vehicle, and immediately drove away. (JA 76-77, 101-06).

It should be noted that Collins' testimony was that he did not have a firearm, did not leave his vehicle, nor did he at any time make physical contact with C.S. (JA 136-39). However, throughout the arguments following the presentation of evidence, defense counsel repeatedly referred to the legal analysis that would apply assuming that the trial court, as the fact-finder, believed the Commonwealth's version of events. (See JA 168-81).

It was undisputed that Collins' purpose for entering Mecklenburg County on the date in question was to apprehend the fugitive. (See, e.g., JA 75-77, 257-58).

5

## SUMMARY OF ARGUMENT

On the first issue, federal common law is such that a bondsman may seize and deliver a fugitive and "may pursue him into another State." Taylor v. Taintor, 83 U.S. 366, 371 (1872). In this case, the Virginia Supreme Court's interpretation of the Virginia bail statutes as revoking an out-of-state bondsman's common law right to pursue a fugitive into Virginia was not established until the conclusion of the direct appeal in this case, and its retroactive application to Collins' alleged offense denied Collins has right to due process. At trial, counsel failed to raise this argument and preserve the issue for appeal, as reasonable counsel would have known that this was the main issue in the case. The state court's decision was contrary to and an unreasonable application of Strickland v. Washington.

On the second issue, Collins' intent was to return to justice a fugitive whose liberty had been revoked by a North Carolina court. Collins possessed intent only to support a conviction for acting as a bail recovery agent without a license but not abduction, and the evidence therefore was insufficient to support Collins' convictions and violated his rights to fundamental fairness and due process. Counsel failed to raise this argument at trial and preserve the issue for appeal, and the state court's decision on this issue was an unreasonable application of Strickland v. Washington.

# ARGUMENT

**I.**    **Collins' Trial Counsel Was Ineffective in Failing to Preserve for Appeal the Issue of Whether the Retroactive Application of Virginia Statutory Licensing Requirements to Limit His Common Law Rights as a Bail Bondsmen Violated His Right to Due Process.**

## Standard of Review

In a § 2254 habeas proceeding, this Court reviews the district court's legal conclusions *de novo*, applying the standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996.  See McNeill v. Polk, 476 F.3d 206, 210 (4th Cir. 2007); DeCastro v. Branker, 642 F.3d 442, 449 (4th Cir. 2011).

This Court may grant a habeas petition on a claim that was adjudicated on the merits in state court if the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1) & (2).

## Argument

The Virginia Supreme Court's interpretation of the Virginia Bail Statutes as revoking an out-of-state bondsman's common law right to pursue a fugitive into Virginia was not established until the conclusion of the direct appeal in this case, and

7

its retroactive application to Collins' alleged offense denied Collins his right to due process.

At trial, counsel failed to raise this argument and preserve the issue for appeal, as reasonable counsel would have known that this was the main issue in the case. Furthermore, the state court's decision was contrary to and an unreasonable application of Strickland v. Washington.

### A. Federal common law is such that a bondsman may seize and deliver a fugitive and may pursue him into another state.

In Taylor v. Taintor, 83 U.S. 366, 371 (1872), the United States Supreme Court, declared the common law of the United States, carried over from the common law of England as of the time of the adoption of the Constitution in 1789, with respect to the extraterritorial reach of a bail bondsman is summed up as follows:

> When bail is given, the principal is regarded as delivered to the custody of his sureties.  Their dominion is a continuance of the original imprisonment.  Whenever they choose to do so, they may seize him and deliver to him up in their discharge; and if that cannot be done at once, they may imprison him until it can be done.  They may exercise their rights in person or by agent.  They may pursue him into another State; may arrest him on the Sabbath; and, if necessary, may break and enter his house for that purpose.  The seizure is not made by virtue of new process.  None is needed.  It is likened to the rearrest by the sheriff of an escaping prisoner.

Id. at 371.  The ability for agents and bondsman to cross state lines to enforce bonds in their home state falls under the Commerce Clause of the United States Constitution, Art. 1, Sec. 8:

8

> The Congress shall have the Power To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States; but all Duties, Imposts and Excises shall be uniform throughout the United States; …To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes.

Virginia trial courts have continued to recognize that the power given to a bondsman is grounded in the notion that the principal is always in "actual or potential custody of the bail who are in contemplation of law, his jailers." Commonwealth v. Lyon, 45 Va. Cir. 191 (1998) (citing Levy v. Arnsthall, 51 Va. (10 Gratt.) 641, 643 (1854)).

"In general, the surety may do whatever an officer might do with a warrant before the defendant's arrest, even to the extent of making forcible entry into the defendant's home." Id. (citing Restatement of Security §204, Comment B (1941)).

Dating back to English common law, it is recognized that the bail contract created a jailer/prisoner relationship between the bondsman and the principal. While no longer physically jailed, he remained the bondsman's prisoner and the bondsman retained the right to seize him, return him to jail, or detain him if necessary without need for additional process or authority. These rights were recognized to be governed intrastate, by the laws of the state where the bond was written and in interstate by federal common law.

Sir William Blackstone (3 Com., 290) says the security given for the appearance of a party arrested is called bail, because the defendant is delivered to the surety, and is supposed to continue in his friendly custody, instead of going to jail.

> Bail, in the language of the books, are said (6 Mod. 231) to have their principal always upon a string, which they may pull whenever they please, and surrender him in their own discharge. They may take him up, even upon a Sunday, and confine him until the next day, and then surrender him. The doing so on Sunday is no service of process, but rather like the case where the sheriff arrests a party who escapes, for that is only a continuance of the former imprisonment. Lord Hardwicke says (1 Atk. 237; Ex-parte Gibbons) it is the constant language of courts that bail are their principals' jailers, and that it is upon this notion that they have an authority to take them; and that, as the principle is at liberty only by the permission and indulgence of the bail, they make take him up at any time. The same principle is recognized in Shower (Anonymous case, 214), where it is said by the court that bail are but jailers, pro tempore; and in case a man absconds, and his bail cannot find him, they shall have a warrant to take him out of any pretended place of privilege, in order to surrender him, because he is a prisoner to the court, and they may call him at pleasure. If the principal is to be considered as standing in the situation of a prisoner who has escaped from the arrest of the sheriff, according to the language of one of the cases, can there be any reasonable doubt but a sheriff, in such case, would have a right to pursue and arrest his prisoner in a neighboring State; and, by parity of reasoning, bail must have the like authority. The cases I have referred to are sufficient to show that the law considers the principal as a prisoner, whose jail liberties are enlarged or circumscribed, at the will of his bail; and, according to this view of the subject, it would seem necessarily to follow that, as between bail and his principal, the controlling power of the former over the latter may be exercised at all times and in all places; and this appears to me indispensable for the safety and security of bail.

Nicolls v. Ingersoll, 7 Johns 145, 155-156, 1810 N.Y. LEXIS 191 at 16-18 (NY Supreme Court Judicature, 1810). Moreover,

10

That the bail may break open the outer door of the principal, if necessary, in order to arrest him, follows, as a necessary consequence, from the doctrine that he has the custody of the principal; his power is analogous to that of the sheriff, who may break open an outer door to take a prisoner, who has escaped from arrest. But the case of Shears v. Brooks (2 H. B1. 120) goes the whole length of this doctrine. Lord Loughborough there says, when a party is bailed, the bail have a right to go into the house of the principal as much as he has himself. They have a right to be constantly with him, and to enter when they please and take him. The right to break open the plaintiff's house, in the case before us, is fortified by the circumstance of his having been taken a few days before on the bailpiece. His situation, in point of fact, as well as in judgment of law, was somewhat analogous to that of a party escaping from arrest.

One of the judges made an observation, in the case last referred to, which is very important, and shows that, on all these points the rights of the bail should be liberally considered. He said that a determination, in that case, against the right of the bail to enter the house, would affect the liberty of the subject, as it would make it extremely difficult to procure bail."

Nicolls v. Ingersoll, 7 Johns at 156, 1810 N.Y. LEXIS 191 at 18-19.

The power of taking and surrendering is not exercised under any judicial process, but results from the nature of the undertaking by the bail. The bailpiece is not process, nor anything in the nature of it, but is merely a record or memorial of the delivery of the principle [sic] to his bail, on security given. It cannot be questioned but that bail in the Common Pleas would have a right to go into any other county in the State to take his principal; this shows that the jurisdiction of the court in no way controls the authority of the bail; and as little can the jurisdiction of the State affect this right, as between the bail and his principal. How far the government would have a right to consider its peace disturbed, or its jurisdiction violated, or whether relief would not be granted on habeas corpus, where a citizen of this State was about to be carried to a foreign county, are questions not now before the court.

Nicolls, 7 Johns at 154, 1810 N.Y. LEXIS 191 at 15.

11

Relying on those authorities and others both pre-Constitution English authorities and American case law, the United States Supreme Court concisely stated the principles of the common law as it existed in the United States as of 1872 with respect to relationship of bail and his principal, the power of bail to "pull the string" on his principal, "*[t]hey may pursue him into another state*; may arrest him on the Sabbath; and, if necessary, may break and enter his house for that purpose." Taylor, supra (emphasis added).

The right of a bondsman to recapture his principal has continued to be recognized as one that exists independent of additional criminal or extradition process.

> The right of the surety to recapture his principal is not a matter of criminal procedure, but arises from the private undertaking implied in the furnishing of the bond. It is not a right of the state but of the surety. If the state desires to reclaim a fugitive from its justice, in another jurisdiction, it must proceed by way of extradition in default of a voluntary return. It cannot invoke the right of a surety to seize and surrender his principal, for this is a private and not a governmental remedy. It is equally true that the surety, if he has the right, is not required to resort to legal process to detain his principal for the purpose of making surrender. There is no conflict between the two rights. Extradition can only be exercised by a government at the request of a government. Surrender by bail can be exercised only by the individual, who is bail.

Fitzpatrick v. Williams, 46 F.2d 40, 40-41 (5th Cir. 1931) (internal citations omitted).

12

**B.** **The abolishment of a common law right to apprehend a fugitive was not clear until the Virginia Supreme Court interpreted the statute at the conclusion of Collins' direct appeal.**

In 2004 the Virginia Assembly enacted Sections 9.1-185 to 9.1-185.18 relating to bail bondsman and Section 9.1-186 to 9.1-186.13 relating to bail recovery agents. The statutory revisions attempted to comprehensively address the process of becoming and acting as a bail bondsman and bail recovery agent. However, there is no express discussion or provision addressing a bail bondsman who is licensed in a foreign state and seeking to recover a principal located in Virginia in order to return him to the foreign state.

In the case at bar, the Virginia Supreme Court, as a matter of first impression, determined that these statutes abrogate any contractual or common law power to pursue a fugitive bailee into Virginia and return him to a foreign state. Moreover, the Virginia Supreme Court decided that these statutes required an out-of-state bondsman to comply with the same regulations as domestic bail bondsman. Collins v. Commonwealth, 283 Va. 263, 270-71, 720 S.E.2d 530 (2012).

In order to be licensed as a bail bondsman, the applicant must do the following: (1) file an application in the form and manner required by the board; (2) pass a bail bond exam; (3) submit his fingerprints and authorize a criminal record background search to be verified by the Federal Bureau of Investigation; and, (4) pay a non-refundable processing fee. Va. Code § 141-190 (B) (1)-(4).

13

In addition, he must declare himself to be either a property bail bondsman or a surety bail bondsman.  A property bail bondsman, prior to licensing, must establish his financial strength, either in real property, which is to be subject to deed of trust in favor of the Commonwealth, or in cash or certificates of deposit verifiable by the Commonwealth.  Va. Code § 9.1-190(C) (2)-(3).  A surety bail bondsman must submit proof of his license as a property and casualty insurance agent with the State Corporation Commission.  Va. Code § 9.1-190(D).  Accordingly, a foreign bail bondsman seeking to apprehend an identifiable fugitive who has absconded to Virginia would have extreme difficultly meeting the licensing requirements necessary to qualify as a Virginia licensed bail bondsman.  Similarly, a foreign bail bondsman nearly cannot meet the requirements of a bail enforcement agent for the purposed of an isolated entry into Virginia to apprehend a fugitive from another state.

The decision from the Virginia Supreme Court in this case negated the federal common law as determined by the United States Supreme Court, with respect to North Carolina bondsman seeking to recover principals who flee to Virginia.  This ruling is problematic in that the act makes no provision to permit a Virginia licensed bondsman or bail enforcement agent to recover a principal on behalf of the bondsman not licensed in Virginia.  "During recovery of the bailee, a bail enforcement agent shall have a copy of the relevant recognizance for the bailee.  He shall also have written authorization from the bailee's bondsman, obtained prior to effectuating the

14

capture." Va. Code § 9.1-186.12 (A). Under the Virginia Supreme Court's interpretation, an individual not licensed in Virginia, regardless of their out-of-state licensure, is not recognized in Virginia as a bondsman. Therefore, the licensed Virginia bondsman cannot possess the required written authorization because the out-of-state individual is not recognized as a bondsman. Accordingly, there is no provision for a North Carolina bondsman to seek the assistance of a Virginia licensed bondsman or enforcement agent.

This narrow interpretation of the requirement to a licensed bondsman not only affects bondsmen who write bonds in sister states, but also would appear on its face to apply to a bondsman who writes bonds for federal criminal defendants outside of Virginia. Under the Virginia Supreme Court's application of the statute, any such federal bondsman would also have no ability to recover the federal defendant who absconded to Virginia without a formal court process or employment of federal law enforcement agents.

The Virginia Supreme Court thought it "inconceivable" that the licensure requirements would not apply to an individual from out of state. However, an unstated legislative intent to abrogating a foreign bondsman's right to enter Virginia on one occasion to collect a fugitive and return him to his home state, would have consequences far less conceivable. Because an individual licensed out of state does not meet the definition of a bondsman under the Virginia Code, he could not enlist

15

the assistance of a Virginia licensed bondsman to collect his fugitive under Virginia statutes.

Moreover, even if Collins was willing and able to take the time to go through the licensure process (without losing his fugitive), he could not meet the residency/property requirements to become licensed in Virginia. *In all likelihood, he would therefore have no means of recovering his fugitive once that fugitive entered Virginia. Simply put, Virginia will become a safe haven for federal and out of state fugitives whose' bonds were written by individuals out of state who now have no legal authority to collect them.*

This interpretation causes the contractual rights of the out-of-state bondsman to be defined not by the forum of the bailment, where the relationship is formed, but by the law of whichever jurisdiction to which the principal may abscond. Such a result could lead to chaos and uncertainty given the ease of transportation and mobility of today's population. At the time of writing the bond, the non-Virginia bondsman has no ability to determine his risk because he does not know whose law will apply when it is time to find his principal.

Under the principal holding of Taylor v. Taintor, 83 U.S. 366, 371 (1872), it is no defense to the obligation to pay the bond in the forum court that the principal fled to a state which does not permit the bondsman to recover him. In order to have some certainty as to the ability to exercise the common law right to follow the

16

principal wherever he may be, there must be consistent federal common law allowing a bondsman to understand his rights and limitations. Otherwise, he is at the whim of whichever of the other 49 states the principal chooses to flee. The substantive rights of recovery are determined by the principal and not the bondsman.

An equally fair interpretation of the statute is that the legislature sought to make more uniform the practices of those who sought to write bonds for Courts in Virginia and act as enforcement agents to collect fugitives who did not appear in Virginia Courts under those bond agreements. An out-of-state bondsman, like Collins, who do not seek to write bonds in Virginia or act as enforcement agents in Virginia, except when pursuing a foreign fugitive, would continue to be governed by the common law which has existed since before this Country was a sovereign nation. In light of the length of the time that the common law has existed, and the broad powers it has granted bondsmen under the bond contract, had the legislature intended to abrogate it, they would have specifically indicated so rather than leaving it to judicial interpretation.

North Carolina, whose statutory scheme closely resembles that of Virginia, recognized that although the statute appears to prohibit all unlicensed bondmen or recovery agents from performing these services, the statute did not specifically address out-of-state bondsman, and the blanket language was not a negative implication that out-of-state bondsmen were not intended to be covered:

17

> While N.C. Gen. Stat. §58-71-40 (a) provides that "no person shall act in the capacity for professional bondsman, surety bondsman, forerunner or perform any of the functions, duties, or powers prescribed for professional development, surety bondsman, or runners" unless licensed by the Commissioner of Insurance, the statute does not specifically seek to regulate the actions [of] foreign bail bondsman…  Further, Taintor provides that bail bondsman can pursue defendants in other state; [State v.] Mathis[, 349 N.C. 503, 509 S.E. 2d 155 (1998).] also provides that seizure of a principal is not considered an arrest and the government should not interfere with the bail contract.

Attorney General of North Carolina, Response to Request for Advisory Opinion Regarding out of State Bail Bondsman Entering North Carolina to Recover Principals, (Oct. 14, 2009) at 3.

The Opinion concludes, "It is my opinion that the common law set out [in] Taintor is still in effect in North Carolina.  As such, currently it is not unlawful for foreign bail bondsman to pursue principals into the State."  Id.; see also, January 9, 2008 letter from South Carolina Atty. Gen. to Jeffrey B. Moore, Executive Director, South Carolina's Sheriff's Association ("Consistent with the above, and in the opinion of this office, a bail bondsman from outside South Carolina would appear to have the authority to arrest a defendant in South Carolina on a warrant from another state revoking the defendant's bond in that state.").

While the Virginia General Assembly may have the power to regulate the activities of in state and out-of-state bondsman operating in Virginia, it may not so abrogate the federal common law so as to prohibit a foreign bondsman from being

18

able to recover his fugitive principal under a bail contract established outside of the Commonwealth.  Assuming, *arguendo*, that they have that ability, the 2004 statutes cannot be interpreted to abrogate that longstanding common law right where they fail to specifically so state.

    **C.**    **Because the Virginia statutes failed to expressly abrogate the federal common law, Collins had the right to use the broad authority granted to him under the bondsman/principal relationship to recover his fugitive, including temporary detention of the complainant for the limited period of time it took to confirm his identification.**

"If a judicial construction of a criminal statute is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct at issue' that must not be given retroactive effect."  <u>Bouie v. City of Columbia</u>, 378 U.S. 347, 354 (1964).

Prior to this case, no Virginia court had held that the language of the statutes in question abolished a bail bondsman's common law right to apprehend a fugitive. The statute's language lacked certainty and failed to put a bondsman on notice that his common law right was suddenly eliminated, and the ultimate ruling by the state court could not be applied retroactively to his conduct.  <u>See</u>, <u>e.g.</u>, <u>Lopez v. McCotter</u>, 875 F.2d 273 (10th Cir. 1989); <u>Commonwealth v. Wilkinson</u>, 415 Mass. 402, 613 N.E.2d 914 (1993).

19

In Commonwealth v. Wilkinson, 415 Mass. 402 (1993), the defendant was charged with kidnapping and assault with a deadly weapon. The defendant was a bondsman properly licensed in Oklahoma where he had posted a bond for an individual that had fled to Massachusetts and become a fugitive. The Massachusetts Supreme Court recognized that there had been a common law right of a bail bondsman to enter a foreign state to recover its principal without need for additional process. However, the court found that the Commonwealth of Massachusetts could, and in fact did, abrogate the common law by enacting a statute that required additional process before a bail bondsman could return his principal to the state from which he had become a fugitive.

"The matter does not end there, however. 'If a judicial construction of a criminal statute is unexpected and indefensible by reference to the law which had been expressed prior to the conduct and issue, it must not be given retroactive effect.'" Id. (citing Bouie v. Columbia, 378 U.S. 347, 354 (1964) (quoting Hall, General Principles of Criminal Law, 61 Second Edition 1960)). "We have never before applied the act in these circumstances to foreign bail bondsman or their agents, and the provisions of the act itself do not give adequate notice to bondsmen that their common law rights had been abrogated." Id. at 408. **The decision we announced today, thus, should not be retroactively applied to the defendant.** Accordingly,

20

since the defendant did not have fair notice that his contact was forbidden by the act, he may offer as a defense to the charges pending against him that he possessed lawful authority to remove [the fugitive] from the Commonwealth without complying with the act." Id. (emphasis added).

In Lopez v. McCotter, 875 F.2d 273 (1989), the defendant's company posted a bond to secure the release of Rudy Ojinaga who had been arrested on criminal charges in Texas. When Ojinga failed to satisfy the conditions of his release, Lopez attempted to retake him, first through an agent, at Ojinga's family's house in New Mexico. A few days later, Lopez and several armed agents arrived at Ojinga's family home and attempted to make a forcible entry. A standoff ensued and continued when a sheriff's deputy, and later another police officer arrived. Finally, when State Police officers arrived Lopez and his men surrendered. Lopez was ultimately charged with attempted aggravated burglary and aggravated assault on Ojinga's father and both police officers.

As his primary defense, Lopez relied on the broad authority granted a bondsman by the common law. The United States Court of Appeals for the Tenth Circuit did not take issue with the assertion that subsequent New Mexico legislation had abrogated this common law right. Instead, they focused on the retroactive application of the New Mexico Court's interpretation of that legislation.

21

"Our inquiry in this case is not into what the law of New Mexico now is with respect to the recapture by a foreign bail bondsman of his principal in New Mexico. The New Mexico courts have spoken to this issue: henceforth, a foreign bondsman must comply with the UCEA in seeking the re-arrest of a principal. State v. Lopez, 105 N.M. 538. We must, however, determine whether the statutory construction announced in State v. Lopez was 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue' as the phrase is used in Bouie so that it should not be applied retroactively. See Bouie, 378 U.S. at 354." Lopez v. McCotter, 875 F.2d at 273.

The Tenth Circuit found that it was required to determine whether the state court's construction of the bail reform legislation was "unexpected" in the context of both the statutory authority and prevailing common law. In doing so, it found that the statutes did not give Mr. Lopez "fair warning" that his attempt to capture Ojinga was not privileged under common law. Accordingly, the Court found that because the decision of the New Mexico Court of Appeals was unforeseeable and retroactively rendered Mr. Lopez's conduct criminal by depriving him of a bail bondsman's common law privilege, it violated the due process. The Court further found that Lopez could not have anticipated the court's holding. Id.

Of note, the court rejected the State's reliance on an Oregon decision insomuch as the Oregon court had relied on the fact that their bail reform statutes "expressly rejected the common law bail system" when it enacted its legislation. Id.

The opinions of the Massachusetts Supreme Court and the United States Court of Appeals mirror the case at bar on the dispositive issue. As in those cases, the Collins case was the first time that the 2004 amendments to statutes pertaining to bail bondsmen and bail enforcement agents had been interpreted by any Virginia appellate court as abrogating any portion of a bail bondsman's common law right to recover his principal. As in Lopez and Wilkinson, the Virginia statutes do not explicitly revoke previously recognized common law. Nor do they specifically forbid an out-of-state bondsman from entering into Virginia to apprehend a fugitive for whom he has posted bond in another state the purpose of returning him to that foreign state. These statutes simply provide a means for licensure of an individual to post bonds in Virginia Courts and a requirement one must be licensed to conduct business as a bondsman or bail enforcement agent in Virginia.

It follows that where the Virginia Supreme Court's interpretation of the Virginia Bail Statutes as revoking an out-of-state bondsman's common law right to pursue a fugitive into Virginia was not established until the Collins case, its retroactive application to Collins' alleged offense of 2007 denied Collins has right to due process.

23

**D.    Collins' was denied his constitutional right to effective assistance of counsel, and the state court's determination under <u>Strickland v. Washington</u> was unreasonable.**

Counsel's failure to raise this argument at trial and preserve the issue for appeal was monumental, as reasonable counsel would have known that this was the main issue in the case.  As a result, there should be no doubt that Collins suffered prejudice under <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).

In the lower court, the district court agreed with the conclusion of the Virginia Supreme Court that counsel was not ineffective because Collins actually denied that the criminal acts in question ever occurred.  The district court stated, "Given Collin's testimony, it made tactical sense to argue hardest about innocence, not retroactivity." (Mem. Opinion, p. 11).  This ruling was in error. Moreover, it was unreasonable.

Just like in state court, the basis for denying this claim was that because Collins stated that he did not attempt to seize C.S., counsel was not deficient in his performance and there was no prejudice.  However, counsel actually argued repeatedly in the alternative that either there was no attempted abduction or, if the court believed the Commonwealth's evidence, Collins acted under a mistaken belief that he had the legal justification to take C.S. into custody.  (9/19/08 Tr. 99-110).  For instance, from the very beginning of the argument, counsel stated, "If the court believes the Commonwealth's evidence that Mr. Collins went there and forcibly

24

attempted to get [C.S.] into this vehicle, then we're in the position of mistaken facts are applicable and the charges should be dismissed." (9/19/08 Tr. 99). Counsel continued and argued, assuming the court accepts the Commonwealth's facts, Collins was acting under the color of law. (9/19/08 Tr. 103-04, 106-09). Thus, any assertion that counsel made a tactical decision ignores the underlying record.

Furthermore, these defenses are not mutually exclusive, and both could and should have been advanced. Counsel was clearly on notice that Collins' status as a licensed North Carolina bail bondsman was a potential defense in the case in so much as he argued Collins common law rights under Taylor. If, as the district court stated in part "B" of its memorandum opinion, the fact that this issue was addressed by the trial court put Collins counsel on notice that its retroactive application was an issue, then Collins' counsel should have made the next very logical argument that an interpretation of the statute as abrogating Collins common law rights would violate his right to due process in its retroactive application.

The bottom line is that the state habeas court's ruling on this issue was an unreasonable application of Strickland v. Washington. The Virginia Supreme Court's ruling on this claim of ineffective counsel was objectively unreasonable in relying on a purported tactical choice that offered no benefit whatsoever to Collins, and the district court erred in rejecting this claim as well for all the reasons previously stated.

25

**II.    Collins' Counsel Was Ineffective in Failing to Argue at Trial and on Appeal That Collins Lacked the Requisite Intent to Commit an Abduction Because the Detention Was Merely Incidental to His Acting Without a Virginia License.**

### Standard of Review

In a § 2254 habeas proceeding, this Court reviews the district court's legal conclusions *de novo*, applying the standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996.  See McNeill v. Polk, 476 F.3d 206, 210 (4th Cir. 2007); DeCastro v. Branker, 642 F.3d 442, 449 (4th Cir. 2011).

This Court may grant a habeas petition on a claim that was adjudicated on the merits in state court if the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1) & (2).

### Argument

This issue presented is based on this Court's granting of the certificate of appealability and relates specifically to the original claim C as presented in the habeas petitions filed in both the Virginia Supreme Court and the federal district court.  This issue states, in full, that counsel failed to raise at trial and on appeal that Collins lacked the necessary specific intent to deprive the complainant of his personal liberty;

26

rather, Collins was simply acting as a bail recovery agent, albeit without a license, and his attempted detention or restraint of the complainant was simply incidental to the offense of acting without a Virginia license.

Collins' clear intent was to establish the identification of the complainant as the fugitive and, if so, to deliver him to the North Carolina Courts who had already deprived him of his personal liberty. Collins was doing nothing more than acting as a bail recovery agent, albeit without a license. See Va. Code § 9.1-186.13. Therein lies his intent and the offense for which he was guilty.

Virginia law states that when a detention is merely incidental to another offense, the Virginia legislature did not intend to expose the defendant to the more serious consequences of the abduction statute. In Brown v. Commonwealth, 230 Va. 310, 337 S.E.2d 711 (1985), the Virginia Supreme Court stated as follows:

> [I]n the enactment of the abduction statute the General Assembly did not intend to make the kind of restraint which is an intrinsic element of crimes such as rape, robbery, and assault a criminal act, punishable as a separate offense. . . .
>
> We hold, therefore, that one accused of abduction by detention and another crime involving restraint of the victim, both growing out of a continuing course of conduct, is subject upon conviction to separate penalties only when the detention committed in the act of abduction is separate and apart from, and not merely incidental to, the restraint employed in the commission of the other crime.

27

Id., 230 Va. at 314, 337 S.E.2d at 713-14; see, e.g., People v. Daniels, 71 Cal. 2d 1119, 1139, 459 P.2d 225, 238 (1969) (kidnapping does not occur when asportation is merely "incidental to" the commission of other substantive crimes); People v. Miles, 23 N.Y.2d 527, 539, 245 N.E.2d 688, 694 (1969) (adopting a "merger" doctrine, which bars conviction for kidnapping when the underlying crime "could not be committed in the form planned without the limited asportations" inherent in the crime).

Importantly, the ruling in Brown was not based on double jeopardy; instead, it was based on legislative intent. Brown, 230 Va. at 313-14, 337 S.E.2d at 713-14.

The concept of the merger doctrine or the consensus against overlapping charges is not unique to Virginia. Like Virginia, other states or provinces have looked to the legislative intent behind the passage of the abduction statutes, and other jurisdictions have invoked "the rule of statutory interpretation that requires that all laws receive a sensible construction." See Government of The Virgin Islands v. Ventura, 775 F.2d 92, 95-97 (3rd Cir. 1985) (citing cases).

The Third Circuit Court of Appeals has recognized that the "principal danger of over-zealous enforcement of kidnapping statutes is that persons who have committed such substantive crimes as robbery or assault -- which inherently involve the temporary detention or seizure of the victim -- will suffer the far greater penalties prescribed by the kidnapping statutes." Government of the Virgin Islands v. Berry, 604 F.2d 221, 226 (3d Cir. 1979).

28

It is not relevant to the issue that Collins was not charged with acting as a bail recovery agent and his conviction therefore not barred on double jeopardy grounds. Virginia common law is clear that an analysis of whether or not abduction exists, separate and apart from an underlying offense, is very different than a double jeopardy analysis.

The intent analysis in an abduction case is based on whether there is intent to deprive of personal liberty rather than simply an intent to commit another offense which may require temporary detention. Without a specific intent to deprive an individual of their personal liberty, a conviction for abduction cannot be sustained. Brown v. Commonwealth, 238 Va. 310, 313 (1985).

In Johnson v. Commonwealth, 221 Va. 872, 275 S.E.2d 592 (1981), the court found that Johnson entered the complainant's home after asking for a glass of water but being told to wait at the door. Johnson grabbed the complainant tightly from behind, rubbed his hips on her rear end and held her while he attempted to kiss her. It was found that Johnson was in the home ten to fifteen minutes before he left and she began screaming. The court found that while Johnson's act did deprive the complainant of her personal liberty it was done in furtherance of his sexual advances and not with intent to deprive her of personal liberty. Accordingly, the evidence was insufficient to support a conviction of abduction.

29

In the present matter, Collins was engaged in an attempt to recover a bailee who had violated the terms of his bond. Prior to confronting the complainant, Collins placed a call to local law enforcement to ask for assistance in his apprehension of his suspected bailee. No attempt by law enforcement was made to dissuade him or suggest that he needed further authority. When Collins confronted the complainant, he called him by the name of the fugitive who was wanted in the courts of North Carolina. Immediately upon establishing that the complainant was not his suspected fugitive, Collins released the complainant.

Accordingly, where Collins' intent was to return to justice a fugitive whose liberty had been revoked by a North Carolina Court, he possessed intent only to support a conviction for acting as a bail recovery agent without a license but not abduction. Thus, the evidence was insufficient to support Collins' convictions and violated his rights to fundamental fairness and due process.

Additionally, counsel failed to raise this argument at trial and preserve the issue for appeal. Counsel was deficient in his performance at trial in this regard because this additional argument was both available and persuasive, and to the extent that this additional argument had a reasonable probability of success, Collins suffered prejudice as a result under Strickland v. Washington, 466 U.S. 668 (1984).

30

The Virginia Supreme Court's ruling on claim C was unreasonable. The issue is not whether Collins could have been charged, or should have been charged, with a separate offense of violating the bondsman act. This is not a double jeopardy analysis; instead, it is an intent analysis. In other words, the issue is whether Collins had the intent to abduct without justification or excuse. At worst, Collins was acting without a Virginia license, but – under the circumstances – he was not acting without legal justification or excuse, which is a recognized exception under the Virginia law which criminalizes an intentional seizure of a person.

## CONCLUSION

For the foregoing reasons, the Petitioner respectfully requests that this Honorable Court reverse and remand this matter with instructions that the district court grant habeas relief, vacate the convictions, and dismiss the indictments.

Respectfully submitted,

**CLIFTON L. COLLINS**

By:   /s/ David B. Hargett   
       Counsel

David B. Hargett, Esquire  
Virginia State Bar #39953  
HARGETT LAW, PLC  
11545 Nuckols Road, Suite C  
Glen Allen, VA 23059  
Office: (804) 788-7111  
Facsimile: (804) 915-6301  
email: dbh@hargettlaw.com

James T. Maloney, Esquire  
Virginia State Bar #40360  
JAMES T. MALONEY, PC  
Nine South Adams St.  
Richmond, VA 23220  
Office: (804) 788-1956  
Fax: (804) 788-1940  
email: filings@jamestmaloney.com

*Counsel for Petitioner - Appellant*

*Counsel for Petitioner - Appellant*

31

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>
### Certificate of Compliance with Type-Volume Limitation,
### Typeface Requirements, and Type Style Requirements

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

    this brief contains <u>7,709</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    this brief has been prepared in a proportional spaced typeface using <u>Word Perfect 2010</u> in <u>14 point Times New Roman</u>.

/s/ David B. Hargett<br>David B. Hargett

Dated:  April 2, 2015

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on April 2, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Donald E. Jeffrey, III
OFFICE OF THE ATTORNEY
  GENERAL OF VIRGINIA
900 East Main Street
Richmond, VA 23219

*Counsel for Appellee*

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

/s/ Melissa A. Dockery
Melissa A. Dockery
GIBSON MOORE APPELLATE SERVICES, LLC
421 East Franklin Street
Suite 230
Richmond, VA 23219